Petitioner. Mr. Evans for the Petitioner, Ms. Citrin for the Respondent. May it please the Court, the last time we all got together was two and a half years ago. I remember. When I was here complaining that the FCC was obstinately refusing to implement the mandate of Section 331 of the Act. And at that time we expressed our concern that if the Court agreed with us and compelled the FCC to obey the mandate of the Act, that the FCC was so institutionally opposed to obeying that particular section of the Act, that they would attempt, using all their power, to undermine the Act and undercut it. Do you think anything in our previous decision mandates the result that you want in this case? It's not like this is a failure to follow the mandate that we issued in December 2012, right? I think it is a failure. Which words in the previous decision do you think they're not obeying? They were directed, Section 331 requires the FCC to reallocate our channel from Nevada, in this case, to New Jersey. But we didn't say what channel it had to be on, right? There's nothing in that opinion that said, I'm going to use virtual and real channels because those are the only things I understand here, but nothing in that said one or the other, right? No, it said the channel that we had. The channel that we had was to be reallocated. No, that's not right. That's not what we said. It says the first sentence directs the FCC to allocate VHF channels to each state where technically feasible. The second sentence directs the commission to grant any proposal technically feasible reallocation interpreted this way. This is to ensure the states will have a VHF station. This is the best interpretation. Given this, we remand to the commission with instructions to approve the reallocations. But the reallocation didn't say what channel, did it? Well, it could only have been referring to the reallocation of the only channel that we had. What if they reallocated it to a different VHF, so something else between 2 and 13? I don't think they could have done that because what the act requires is the reallocation of the channel that was in another state to the state that had no VHF. Which section of the statute has that requirement, that it be the same channel? It doesn't expressly say that, but it says the channel that you have has to be reallocated to the state that doesn't have the VHF channel. Can you explain for me, I need to understand the basics of what's going on in terms of over the air and cable, I guess the two issues here. So for over the air, if you're on 3.10 and the Hartford station or the Philadelphia station is on 3.1 through 3.9, what does that mean for the consumer who has over the air? What does that mean, if anything, I think I know for the cable, but explain what's going on. What happens, well it's interesting because the... Is there any over the air anymore anyway? There's digital, yeah, you have a digital converter, right? The over the air people can still get over the air with digital converters. And there are a large number of people, mostly poor, who don't have cable or satellite, right, and still get over the air. That's right, and the cable carriage in these particular markets, particularly Connecticut and New York and New Jersey, is especially intense because over 80% of the market has cable. So almost everybody, 80% of the people have cable TV. There is still over the air service, though, and that's pretty much what we've been relegated to because the FCC has relieved the major cable operators. Okay, so just on the mechanics of this, and maybe this will not be relevant to the legal, but just to understand this, on the over the air, if you're 3.10 and another station is 3.1 through 3.9, what happens when you turn on your over the air TV? What happens is, first of all, you'd have to, you may remember when the DTV transition occurred, everybody had to have their TV set re-scanned, the available over the air channels. That's what happens whenever a new channel comes into a market. Your TV set has to identify it as a signal that's coming in, and in our case, it would identify us as channel 3.10. It would also identify channel 3.1, which is the Connecticut station, and you actually saw a screen shot. So you would see both come up when you were trying to get channel 3? No. What happens, and as I say, there was a screen shot that the intervener supplied of what the viewer sees when this comes on your screen. What it shows is 3.10. It has the call sign of the stations that is 3.10, and typically it will have the network affiliation. So the consumer sees two different things. He or she can select 3.1 or 3.10, and that's why, even though the intervener said there's going to be massive confusion out there, there hasn't been a single instance of a single consumer saying, I was confused or I didn't know what channel. Because the consumer has to make another, just so I understand, both pop up on the screen? No. Once your set scans and sees that there are two different 3s, 3.1 and 3.10, that's retained in your TV set, and then the consumer just clicks on 3.1 or 3.10. Okay. They don't see both. It's recognized as two completely different channels. But both come up without interference to the other? Totally without interference. And that's one of the bizarre things here. So for over-the-air, just so I understand this, and maybe these questions are better for the FCC, but for over-the-air, the fact that two channels have channel three doesn't cause any problem for the consumer. It causes no problem whatsoever. Although they may dispute that, but they'll explain why there's a problem for the consumer. I don't think they are disputing that, because there hasn't been a single complaint from anybody saying that they were confused. And, in fact, channel four, which the FCC assigned to New Jersey, you know, when they were trying to backpedal and try to fill in section 331 two years ago, that station operates on channel 4.1 with as much of an overlap over a piece of channel four in New York as we've got with channel three, and nobody has complained about that. Okay, then on cable, if you're on 33 rather than three, you're not getting must-carry rights, correct? Well, no. The issue there is the Cable Act requires you to be carried on your over-the-air channel, which would be channel three. The FCC has taken the position that your over-the-air channel now is not your over-the-air channel, but it's your PSIP channel. Right. And that's why, even though we've... But that's why, I mean, if they move you to 33, you're not going to, correct me if I'm wrong, your complaint is that you're going to lose must-carry? We would still have must-carry rights, but our must-carry rights would be on channel 33. Right, and you want to be must-carried on three. And the problem with 33, I'll just tell you, is you're... Right, no one watches 33, right? Right, exactly. And that's been confirmed by our own experience when we've been operating on channel three. People just don't click up to 33. They click around where all the big guys are. And what's the use of channel three on cable in the media market that's involved here currently? In the media market, there are some cable systems that have nothing on channel three. My wife's family has a house in New Jersey where there's nothing on three. I think they're just waiting for us to go on the air. But in some of the cable systems in New York... I hope you have more than just your wife's family. I didn't see that in the appendix. One of the cable systems in New York has on channel three ION TV, who's one of the interveners here. That station neither operates on channel three over the air nor has channel three as its PCIP. But relief for you here would foreordain the outcome once you're ready to enjoy must-carry rights? Yes. Because we would be... I mean, the idea is we want the court to say that we're entitled to channel three with all the rights and privileges that the statute gives to somebody who operates on channel three. And that includes on-air cable carriage and over-the-air reception by viewers on channel three. Both of those are... And you believe that NXB resolves that question? NXB resolves the PCIP question to the extent that we have to get into that because the FCC is saying, well, your over-the-air channel isn't your over-the-air channel. It's your PCIP channel. So that's why we've got to look at the PCIP channel. And it's only two... NXB is only two pages long. You can look at it yourself. I have to say, you're here on Vandavis claiming your rights are perfectly clear. NXB is not perfectly clear to me. Well, that may be because there's some language in there, ATSC, NTSC, which I think might be difficult for somebody to understand without knowing the background. But the important thing to know about NXB is two things. First of all, there's no deference due to the FCC with respect to NXB because the FCC left that whole development of the PCIP protocols to an independent expert body, not the FCC, not governmental. And you can see that no deference is due to the FCC. But even if there's no deference, Judge Williams' point is it has to be clear and indisputable, not just you're reading more likely than not better than the other sides, right? You agree with that, right? This mandamus requires clear and indisputable rights, right? Yes. And is your best argument NXB or do you have some other argument, a better argument, or is that your best? There's really 331. There's three arguments. There's Section 331. All right. So 331 says it should be the policy to allocate channels for very high-frequency commercial television in a manner which ensures that not less than one such channel shall be allocated to each state. That's right? Right. Okay. Now, how does that say? Well, it's really the second part that we're looking at where the commission is required to reallocate a license of somebody who says I'm willing to move and change my license to a state, change my channel, not my license. I'm willing to change my channel to a state that doesn't have a VHS. Well, it doesn't say channel in the statute. It says which sentence are you relying on, the next sentence? Yeah, I don't have it in front of me, but I'm pretty certain it says it. It says channels. Which will read to the reallocation of its channel to a community within a state in which there is allocated no, the commission shall order such reallocation and issue a license to such licensee for that purpose. Right. So do we know whether it's the real channel or the virtual channel? The statute doesn't say. The statute, I take it, was probably written before, right? Before there were virtual channels. Yes, it was before there were virtual channels. So we don't know what channel. It certainly isn't. It may be that you'll win in the end. It may well be that you win in the end. But the question is whether it's clear and indisputable when it uses the word channel without telling us which channel, and for very good reason because there was only one kind of channel at the time. Well, but just play that out. Suppose they say, the FCC, that you're still getting very high frequency. I think this is part of their argument. You're still getting very high frequency even if assigned virtual 33, if I have my terminology correct. That's right. So they're still complying with the statute. What's wrong with their theory? Well, what's wrong with it is what they're doing is they've taken your order, which was to change our channel, and they said, okay, buddy, we're going to let you operate on channel 3, on that frequency that's channel 3, but we're not going to give you all the rights that are associated. Well, that's a different – just tell me when they say, and this is a very technical argument I understand them to be making, that you're still getting – the statute says allocate channels for very high frequency commercial television broadcasting, and even when they give you virtual channel 33 or major channel 33, you're still getting very high frequency even though it comes over to the consumer as the equivalent of what used to be UHF. But wouldn't you say that's defeating the point of the statute? I might. I would because the reason – But the question is as a literal matter. As a literal matter, yes, they're allowing us to transmit on the frequencies that constitute channel 3 over the air, but what they're doing is they're taking away all the things that Congress intended for New Jersey to get by assigning us a VHF channel. They're making us look like a UHF channel to any consumer who picks us up over the air, and they're not allowing us to be on our over-the-air channel on cable. We're nobody. And there is a third argument, Judge Garland, which I want to point out. Please. And my ears pricked up in the previous argument when you said, isn't there an easy solution to the case that was right before us? There is an easy solution to this one, too, if you didn't want to get into all the mechanics of PSIPS. Our channel, the channel we've always operated on since year 2002, is channel 3. That's our over-the-air channel. Since the concept of PSIPS arose, virtual channel 3.1 has always been our virtual channel. In 2012, Congress enacted the Middle Class Tax Relief and Job Creation Act, which includes a provision that forbids the commission from involuntarily changing a broadcast television. This is 1452G? 1452G1A. And it prevents the commission from changing either the spectrum usage rights associated with your station or reassigning you to a different channel. Those are the two things that they want. Isn't the argument the same as you went back and forth with Judge Kavanaugh, that you still are not changing from the VHF channel? You still have the same VHF channel. Well, that's the interesting thing, because the FCC Media Bureau, I should say, the FCC Media Bureau and the interveners have consistently taken the position that now in the digital age, your channel is not your over-the-air channel. It's your virtual channel that's assigned through the PSIP process. And that's important because the FCC is relying on that as the basis for denying us carriage on our over-the-air channel on cable. If we were entitled to just our over-the-air channel, there would be no question that we should be on channel 3 right now on all the cable systems. The FCC is saying, no, your channel for cable purposes and other purposes is defined by your PSIP. And we're going to think about that, and until we reach a decision on that, you're not allowed to be or you don't have to be carried on the cable systems. So what that tells you is the FCC itself is taking the position that a channel is not your over-the-air channel, it's your virtual channel. And if that's what they really think, and if that's what the interveners really think, then what the FCC is trying to do is just flatly illegal. It's flatly contrary to what section 1452? What language precisely in 1452? It's 1452 G1, and it says during the period described in paragraph 2, the commission may not, and the period described is basically the period prior to the incentive auctions, or if that ever happens, up to 2022. During that period, the commission may not involuntarily modify the spectrum user's rights of a broadcast television licensee or reassign such a license to another television channel. Well, it says reassign from a very high-frequency television channel to an ultra-high-frequency television channel, right? Yeah, that's down in section B, and there's an argument that could be made that that section also applies, because by what they're doing, they actually are somewhat restricting the availability of UHF stations in the incentive auction, which is what this is all about. But I think the language in G1A is the one that most directly applies to this situation. If they think our channel is the PCIF channel, what they're doing is in direct contravention of that. Okay. Questions? Other questions? No? Okay. We'll hear from the FCC. Good morning, and may it please the Court. My name is Sarah Citrin. I'm here for the FCC. Let me begin by clarifying a couple of things. First, Judge Kavanaugh, I think you said we have two issues here, over-the-air and cable carriage. It's the FCC's position that cable carriage considerations are not part of this case. I know. I was just trying to understand. Okay. I get that. If we're clear on that, I'll move on. Well, maybe you should keep going, just in case. Well, let me just say that there is a cable deferral decision in place as of July. Right, which is not before us. In other words, they're not going to get must-carry rights, even if they prevail here. That's right. What's at issue here is a Bureau-level decision that is an interim decision of what channel should be used while the agency considers the merits of the underlying dispute. Is it correct that there is no intelligible interference with over-the-air usage of the channel now? Our position is not that if PMCM Station uses 310, that there would be interference as a technical matter, sort of receiver interference in receiving both channel 3.1 and 310. But the harm that was before the Bureau concerned potential dilution of the brand identification of incumbent stations of longstanding that for 50 years, 70 years, had identified themselves to viewers as channel 3, and that since the start... Is Evan's assertion correct that what will come up on the screen of the over-the-air viewers would be, when they try to go to channel 3, would be 3 and 3.10, I guess? It should be the case if a receiver is working properly that you can scroll through from 3.1 to, I believe... So the brand name confusion is that in addition to channel 3, which they've known and loved for years, they now see as another option. Well, you could understand it as having to, in addition to, previously there would have been channel 3, and now there's channel 3.1 and channel 3.10. That could cause some confusion. People can't figure that out? I mean, giving consumers in New Jersey an extra channel is going to cause them to freak out with such confusion that they can't remember which channel 3 they're watching? It just strikes me as fanciful. In answer to that, Judge Kavanaugh, it helps to understand that what PMCM is asking the agency to do here would be a novel interpretation of the channel tuning protocol. It has always previously... We're just trying to explore an effect on viewers. Right. I understand, Your Honor, and, you know, I don't... That is the rationale, though, that they would get confused from having an extra channel 3. There's no... It's an extra channel they'll be getting. It's an extra channel they would be getting, and because... And they're going to be confused. Because historically, a major channel number has not been partitioned in this way. What viewers would expect to find is, for example, on 3.1, a station might show its high-definition programming, and then on 3.2, perhaps standard-definition feed or news programming, but affiliated and co-branded with the same station. And I think that kind of relationship among the partitions... That seems like such a thin read, and I know you're... In the 3.31, we went through this last time, but the whole purpose of this was to get over-the-air viewers in New Jersey, given the senator who's behind this, to have the option of a New Jersey VHF station. And the question we parsed through last time was feasibility. There's not any feasibility issue here. There's no consumer interference issue. That's all been technologically solved. And so the whole purpose, and maybe you'll have a literal response to this, which I understand, but the whole purpose of the statute is easily accommodated by allowing them to have 3.10, it seems to me. Well, I think the purpose of the statute, Your Honor, was to give what was a better quality signal in the analog era when the statute was adopted to New Jersey. And as the panel was pointing out, the FCC has done that here. We have reallocated radio frequency channel 3 to PMCM. That's the radio frequency channel they were using. And I think in the court's 2012 decision, the discussion of the if technically feasible language from the statute actually supports that what was at issue was the frequency. The court interpreted that language to be concerned with signal interference, which is a problem with it's a matter of frequency, the radio frequency channel. That's not a problem anymore, though, right? There's no signal interference. That's right, when PMCM uses radio frequency channel 3. But I think the statute simply doesn't speak to and couldn't have given that. Well, the fourth amendment didn't talk about cell phones either, but we apply language that's written, if it's written capaciously enough, to modern circumstances, and it seems like this is not as divorced from the text as you're making it sound. Do we normally apply a clear and indisputable standard? That's right, Your Honor. We are here on a petition for mandamus, and I think at the very least. Just to get to go back on interference, assuming that some theoretical TV watcher could be confused, the FCC has no evidence that any actual watcher has been confused. Is that correct? That's correct, Your Honor. The confusion is imputed. Well, it was a risk of confusion. I think the Court should be thinking of the potential harms here in the context of, well, at the time that the Bureau was asked to reach this interim virtual channel assignment, and what the agency had was two parties who were waving their hands and claiming harm on both sides, and the FCC made an interim assignment that I think prudently avoided breaking new ground while the FCC considers the merits. The decisive proposition is simply holding the status quo. It's not really based on harm. I think that's fair, Your Honor, and it held the status quo both in terms of how the FCC had in every previous case applied this protocol. The FCC has never sanctioned major channel sharing of the kind PMCM is asking here, and it also preserved the viewing landscape and the brand identification of these. Is the proceeding that's going on going to address the question of confusion? I would expect the merits proceeding to address all of the considerations that the parties have put before the agency, including the harms that both assert from this kind of channel sharing, harm or lack thereof. What's interim mean? Do you have a date by which the FCC will render a decision? I can say, Your Honor, that we are actively working on the merits proceeding. That's not helpful. I'm not in a position to give you an exact prediction, but I can say, you know, of course there are other proceedings before the agency as well, but we are actively working on it, and I have no reason to expect that there should be any lengthy delay. What does lengthy mean? Don't make promises you can't keep. So if you're going to say there's going to be no lengthy delay, I'm going to hold you to that, and I'll define lengthy. Fair enough, Your Honor. So tell me what lengthy delay is. I can't make any promises. I know that we're actively working on the proceeding. But presumably there would be, at that point, the traditional APA action available for agency action unreasonably delayed. That's correct, Your Honor. Has there been any harm that you're aware of in the last, I guess it's still been operating the way it was for the last eight weeks because there's been the interim stay in place, so to speak? Anything you're aware of that's been? As far as brand identification, there's nothing I can point to. I will say that I'm not sure that that kind of harm is necessarily the kind of confusion that would generate customer complaints, but it's true that I can't say that there's anything not before you that would evidence the harm that the division was concerned about. Until this channel can get carried on cable, putting aside the harm that you've described of your confusion, is there any harm to anybody? I don't know that there is any harm to anybody. The harm that PMCM has emphasized in its briefs was the risk or the harm of being taken off the air. But, of course, the FCC would permit PMCM to continue to operate so long as it obeyed the interim channel assignment and operated on virtual channel 33, which I'd like to point out to the Court is required under the terms of the construction permit, which is expressly subject, makes the authority that it confers expressly subject to compliance with all FCC regulations. And here the channel tuning protocol is a part of those regulations. The division's interim assignment was an implementation of that regulation. And I think to say that PMCM was free to ignore it just is not consistent with the terms of the construction permit. Do you acknowledge that being on channel 33 is not the same economically as being on channel 3? I don't know that the record supports that. That's PMCM's allegation. That's one of the arguments I think the agency would consider in the merits proceeding. But PMCM has made that bold assertion. Judge Kavanaugh, I frequently find channels in the higher ranges that I watch and actually don't use. I hunt around and not always find them. So I'll take your personal testimony as mine. As Judge Garland pointed out, anecdotal evidence perhaps shouldn't govern here. And I think that, you know, this is one reason that it makes sense for the agency to take account of all these arguments in its merits proceeding. I did just before I conclude or if you have any further questions. Yeah, I still have a question on this, on the statutory language of 331. So in their reply brief they say, page 8, the disparity, I'll just read this and get your reaction to this, the disparity between VHF and UHF channels that Congress sought to address in Section 331A lives on through the use of major channel numbers. If a station would have been identified by the consumers as a VHF station in 1982, it must be so identifiable in 2014. Assignment of virtual channel 33 to WJLP would render the station for all practical purposes a UHF station. So what's wrong with that theory of the statute? I think perhaps the primary thing wrong is that UHF, VHF, those are defined terms commonly understood to refer to specific ranges of frequencies. And, in fact, particularly I did want to briefly address the Spectrum Act argument, but in the Spectrum Act, I believe it's 47 U.S.C. 1401, UHF and VHF are specifically defined in that statute to mean those ranges of frequencies. So even if it comes across as something VHF and UHF to consumers had one meaning, 2 through 13 and then above 13, but you're saying in the statute 331, the technical definition, still VHF could mean something with a virtual channel above 13. That's correct. And very briefly, at the time of the Court's decision, there was, in fact, a channel in New Jersey that had a virtual channel in the 1 to 13 range, and that wasn't an obstacle to this Court's requiring the agency to reallocate the radio frequency channel. So I think PMCM, the position it's taking here today, is somewhat inconsistent. I didn't follow that. At the time of the 2012 PMCM case, the station that had moved off of its radio frequency channel in the VHF range to make it so that there was no commercial channel, that's right, was still channel 9 as far as viewers was concerned. It was still using virtual channel 9. But that's not what the statute is about. The statute is about radio frequency. And just very briefly, the same is true, you know, because counsel addressed the Spectrum Act. The Spectrum Act is about an incentive option of broadcast TV spectrum. It concerns spectrum in every portion of the statute, and it references spectrum and these defined terms, VHF channel, UHF channel, in 1452G that counsel has invoked. And as to the cable carriage issue, just very briefly, that arose toward the end of argument here, and that argument first appears in the reply brief at 8 to 10, I believe. And it's our position that that argument is waived. But in any event, however the agency may have interpreted the term channel in the context of the cable carriage statute, that doesn't mean that the same definition would need to apply in the context of the Spectrum Act. As long as we're being anecdotal here. So my recollection of the bad old days was that the difference between UHF and VHF was not just number, but quality of the reception. And that was the reason why UHF was disfavored. And I take it that now there is no difference in terms of reception. Is that right? That's right. And, in fact, in some cases in digital television. It's better. UHF is better. UHF may be better. People like the low numbers. That's the theory. Just so we don't leave that unresponded, too. People like the low numbers because it's economically valuable to them. I mean, unless the market is foolish, which I doubt, there's a strong market to get the low numbers that match what were the traditional VHF stations. That is the theory. Is there any evidence for that? Other than people are spending millions of dollars based on that theory, there's no evidence. Well, there's no evidence in the record before the court here that that's the case. That is something that the agency can take account of in the merits proceeding. And as Judge Garland helpfully pointed out, we're here on a petition for mandamus. Right. Even if that's true, that doesn't mean that PMCM has shown a clear right to relief under the statute. Questions? More time? I will give you some more time anyway. Step right up. I do have a question for you. I do. So we will. So we're here under the All Writs Act, right? Mm-hmm. So how does this come within the All Writs Act? The All Writs Act is to issue all writs necessary or appropriate in the aid of our respective jurisdiction. So normally this means either to ensure that our mandate is carried out, assume for the moment that I don't think that our previous decision resolved this question, or for agency action unreasonably delayed. And at least at the moment at which you sought mandamus, you can hardly say there was unreasonable delay with respect to their termination of the underlying issue, right? Right. At that time, right. Right. So how do we get to mandamus here? Well, there's also a third factor. What's the third? The third factor is if the agency is acting in direct contravention of the statute. Well, it's not. That is not. That's in the district court mandamus, but it's not in the mandamus that's available to us. This case is brought under 1651. That's the only one that's the only mandamus authority that we have. So I'm not sure how we don't get to make agencies act that way unless. Well, let's look at it this way. First of all, I actually thought that this was in aid of enforcing your original mandate because what the FCC is doing is evading. I understand that argument. I just want to set it aside to see if there's another argument. But if that's what it is, I understand. And secondly, in terms of the delay issue, what's happening is because of the disability that the commission has put us under by not being able to be carried on cable TV, that takes us away from 70 percent of our potential audience. The FCC must know that no TV station can survive without being able to reach 70 percent of its audience. So we're on an iron lung now. And when you talk about delay, I mean, the FCC said back in July that they were going to resolve this matter with undue delay. It's now February, and there's evidently no end in sight. But you have a stay right now, right? We do. So if you're on iron lung, it's not because of the FCC at this point, right? I mean, you're not really on iron lung. We're on an iron lung because of the FCC's delay in resolving the whole case, which includes whether we're going to be allowed to be carried on cable TV. You can't contract, I assume, in this status. We can't contract. You can't get effective carriage. Maybe I'm wrong about this. I thought you said in the brief that your ability to participate in the market with this cloud of uncertainty hanging over you is impeding your ability. That's absolutely true. So I think the delay factor is a real one because we're sucking wind right now because of the position the FCC has put us in. And if the case is not resolved, by the time we go through the administrative process and get back here again in two years, there's going to be a corpse in front of you, not a live television station. The other thing I would add in relation to the interim status of the decision the FCC made, counsel for the FCC said what they were doing by putting us on Channel 33 was maintaining the status quo. I thought I understood her to say that. But that wasn't the case at all. We were operating on Channel 3. There wasn't a single person in the 22 million people that receive our signal that registered any confusion at all, even though the other side was saying, oh, there's going to be all confusion. And, in fact, as I said, there's 105 situations like this throughout the United States where the FCC hasn't done a single thing to remediate an overlapping PSIF issue like the one we have here. In fact, ours is less egregious than those because at least we've got different minor channel and major channels. In the 105 instances, including the other one in New Jersey, they have the same major-minor channel combination. So you would think if there was going to be confusion, it would be even more in those situations, which the FCC doesn't care about. But for the commission to say moving us to Channel 33 maintains the status quo is just not true. The other interveners say they'll be injured if it goes the other way. How can we make a determination about who will be injured without any record? We have your word on the question, which is not bad, but we have your word on the injury to you, and we have their word by declaration of the injury to them. Well, what they tellingly did not say was that there was any single consumer, any viewer of theirs that suffered any confusion. And you can be sure that if there was even one little old lady somewhere that was confused, they would have dragged her before the FCC. But it's the brand dilution, right? Channel 3 in Hartford wants to be Channel 3 down into lower Connecticut, and Channel 3 in Philly wants to be Channel 3 throughout New Jersey and not be diluted. So how do you respond to that? Well, I say, first of all, brand dilution is not really something that's within the FCC's province to be deciding. But secondly, particularly for WFSB, the Hartford station, they don't even have any over-the-air reception in Fairfield County, which is where there's theoretical overlap, because the FCC's interference criteria, the way it set up those channels for over-the-air reception, makes it so that there's interference there between a New York station and a Hartford station, so people just can't pick up the channel over the air. And while we're not on cable, there's nobody that can be confused because we're not on cable. So there's really no way that there could be any brand dilution that they're suffering from. The point is, if you were to win, you would be on cable. That's your theory. We would be on cable, and, yeah, then we'd have the situation where people would see Channel 3.1, which is Eyewitness News Hartford, and Channel 3.10, which is MeTV, Middlesex Township, New Jersey. I mean, you've got to attribute a little bit of intelligence to the viewing audience. I don't see the possibility for confusion there. And as I say, this situation exists in many, many markets around the United States with no confusion, no brand dilution, no nothing. And just to accept their assertion that there's going to be this problem, I think, is wrong. Thank you. Thank you, Congressman.
judges: Garland, Kavanaugh, Williams